UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REINFORCING IRON WORKERS LOCAL 846, AFL-CIO, By and Through DANIEL S. PARKER, in His Representative Capacity; LOCAL 846 REBAR WELFARE TRUST, by and through its BOARD OF TRUSTEES; LOCAL 846 PENSION TRUST, by and through its BOARD OF TRUSTEES; and LOCAL 846 TRAINING TRUST, by and Through its BOARD OF TRUSTEES; and LOCAL 846 VACATION TRUST, by and through its BOARD OF TRUSTEES, <br><br>      Plaintiffs, <br><br> vs. <br><br> TEAM REBAR, INC., <br><br>      Defendant. | FILED: AUGUST 6, 2008      LI <br> 08CV4443 <br> JUDGE   BUCKLO <br> MAGISTRATE   JUDGE KEYS |

## COMPLAINT

Plaintiffs, REINFORCING IRON WORKERS LOCAL 846, AFL-CIO ("Union"), DANIEL S. PARKER, in His Representative Capacity ("Parker"), LOCAL 846 REBAR WELFARE TRUST ("Welfare Fund"), LOCAL 846 PENSION TRUST ("Pension Trust"), and LOCAL 846 VACATION TRUST ("Vacation Trust") (collectively the "Plaintiff Funds," where appropriate), by and through their attorneys, Bartley Goffstein, L.L.C., as their Complaint against Defendant, TEAM REBAR, INC. ("Team Rebar"), state as follows:

1. This action is brought under the provisions of Sections 502 (a)(3), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (g)(2), and 1145.

2.  Jurisdiction in this Court is based upon Sections 502(e)(1) and 502(e)(2) of ERISA, 29 U.S.C. §§1132(e)(1) and (e)(2), and Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947, as amended, 29 U.S.C. 185(a) and 28 U.S.C. §1131.

3.  Venue is proper in this District pursuant to Section 502(3)(2) of ERISA, 29 U.S.C. §1132(e)(2) and 28 U.S.C. § 1391(b), in that the Plaintiff Funds are administered within the jurisdiction of this Court, and LMRA §301, 29 U.S.C. §185, in that Team Rebar has transacted business within the State of Illinois pursuant to 735 ILCS 5/2-209(a)(1) by the reporting and payment of contributions within the State of Illinois.

4.  This Court has personal jurisdiction over Defendant pursuant to ERISA Section 502(e), 29 U.S.C. §1132(e), LMRA, Section 301(a) and 29 U.S.C. §185(a).

5.  Reinforcing Iron Workers Local 846 is a voluntary unincorporated association existing pursuant to the laws of the State of Florida, is an "employee organization" within the meaning of ERISA §3(4), 29 U.S.C. §1002(4), and is a labor organization within the meaning of ERISA §1(5), 29 U.S.C. §151(5). Daniel S. Parker is the Administrator and duly authorized representative of the Union and is authorized to bring this cause of action in his representative capacity.

6.  Local 846 Rebar Welfare Trust is an employee benefit plan within the meaning of ERISA §§3(1) and (3), 502 and 515, 29 U.S.C. §§1002(1) and (3); 1132 and 1145. The Trustees of the Welfare Fund are fiduciaries within the meaning of ERISA §§3(21)(A) and 502, 29 U.S.C. §§1002(21)(A) and 1132. The Trustees of the Welfare Fund are authorized to maintain this cause of action pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), to enforce the terms of an ERISA plan.

7.     Local 846 Pension Trust is an employee benefit plan within the meaning of ERISA §§3(1) and (3), 502 and 515, 29 U.S.C. §§1002(1), (3), 1132 and 1145. The Trustees of the Welfare Fund are fiduciaries within the meaning of ERISA §§3(21)(A) and 502, 29 U.S.C. §§1002(21)(A) and 1132. The Trustees are authorized to maintain this cause of action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), to enforce the terms of an ERISA plan.

8.     Local 846 Training Trust is an employee benefit plan within the meaning of ERISA §§3(1) and (3), 502 and 515, 29 U.S.C. §§1002(1), (3), 1132 and 1145. The Trustees of the Welfare Fund are fiduciaries within the meaning of ERISA §§3(21)(A) and 502, 29 U.S.C. §§1002(21)(A) and 1132. The Trustees are authorized to maintain this cause of action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), to enforce the terms of an ERISA plan.

9.     Local 846 Rebar Vacation Trust is an employee benefit plan within the meaning of ERISA §§3(1) and (3), 502 and 515, 29 U.S.C. §§1002(1), (3), 1132 and 1145. The Trustees of the Plaintiff Welfare Fund are fiduciaries within the meaning of ERISA §§3(21)(A) and 502, 29 U.S.C. §§1002(21)(A) and 1132. The Trustees are authorized to maintain this cause of action pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), to enforce the terms of an ERISA plan.

10.    Plaintiff Funds have standing to sue pursuant to 29 U.S.C. §1132(d)(1).

11.    Plaintiff Funds are located at 2160 Foster Avenue, Wheeling, Illinois. Plaintiff Funds conduct business and administer the Funds within the District.

12.    Plaintiff Funds are the authorized collection agent under the collective bargaining agreement and related trust agreements for contributions and deductions required under the collective bargaining agreement.

13.　　Team Rebar is an employer in an industry affecting commerce and is a corporation organized and existing pursuant to the laws of the State of Florida and, which maintains its principal place of business at 3852 South Hopkins Avenue, Titusville, Florida 32780.

14.　　On October 17, 2006, Team Rebar signed one or more Collective Bargaining Agreements ("Agreements"), agreeing to be bound to a collective bargaining agreement with Reinforcing Iron Workers Local 846, binding Team Rebar to the terms and conditions of the Agreements. (A copy of the Agreements is attached hereto as Exhibit 1.)

15.　　Pursuant to the Agreements, Defendant Team Rebar, Inc., agreed to make contributions to the Plaintiff Funds by the fifteenth day of the month after the month in which work was performed, at rates determined by the trust documents and/or the Trustees.

16.　　As provided in the Agreements, Plaintiff Funds are required to receive, hold, and manage all monies required to be contributed to Plaintiff Funds in accordance with the provisions of the Agreements and for the uses and purposes set forth in the Agreements.

17.　　The Agreements also provide that the employer shall make certain monthly dues payments to the Union on behalf of its members.

18.　　Team Rebar employs or has employed persons represented for collective bargaining purposes by the Union. Team Rebar agreed to be bound by the collective bargaining agreement referred to herein, the terms of which required Team Rebar to contribute to the Plaintiff Funds.

19.　　The Agreement(s) further provide that in the event a contractor fails to make timely contributions, interest shall accrue at the rate of one and one-half percent (1-1/2%) per month on the unpaid balances and the employer further agrees to pay such accounting fees,

attorneys' fees, auditing fees and other expert fees as are necessary if litigation is filed to collect the delinquency.

20. Team Rebar is required by the Agreements to submit to audits by the Plaintiff Funds to determine the accuracy of Team Rebar's contributions to the Plaintiff Funds.

21. For the months of September 2007 through January 2008, and for March, April and June 2008, Defendant failed and refused to submit Remittance Reports or fringe benefits or other contributions to the Trustees and the Union, as required by the Agreements and trust documents. Therefore, Team Rebar is delinquent to the Plaintiff Funds.

22. As a result of the above-described breach of the collective bargaining agreement by Team Rebar, the Plaintiff Funds may be required to (a) deny the employee beneficiaries for whom contributions have not been made by Team Rebar the benefits provided under the benefit plan, thereby causing to such employee beneficiaries substantial and irreparable damage or (b) to provide to employees of Team Rebar the benefits provided under the benefit plan, notwithstanding Team Rebar's failure to make the required contributions thereto, thereby reducing the corpus of such Funds and endangering the rights of the employee beneficiaries thereof on whose behalf contributions are being made, all to their substantial and irreparable injury.

23. Plaintiff Funds, on their behalf and on behalf of all employees for whose benefit the Plaintiff Funds were established, have requested Team Rebar to perform its obligations, but Team Rebar has refused and failed to perform as herein alleged.

24. Plaintiff Funds are without an adequate remedy at law and will suffer immediate, continuing and irreconcilable injury and damage unless Team Rebar is ordered to specifically

perform all of its obligations required under the Agreements, and is restrained from continuing to refuse to perform as required therein.

25. Since Team Rebar has failed to submit report forms showing the contributions due for at least those months referenced in this Complaint, the full amount of contributions cannot be known without an audit of Defendant's records.

26. Pursuant to the Agreements, Team Rebar is obligated to pay the costs of any audit conducted by Plaintiff Funds and the legal fees incurred to initiate and prosecute the proceedings necessary to enforce compliance with these provisions.

27. Team Rebar's failure to submit to an audit is a violation of the Agreements. Plaintiff Funds, therefore, seeks enforcement of these provisions pursuant to Section 502(g)(2)(E) of ERISA, 29 U.S.C. §1132(g)(2)(E) and §301(a) of the LMRA, as amended, 29 U.S.C., §185(a).

WHEREFORE, Plaintiffs pray:

1. That judgment be entered in favor of Plaintiffs and against Defendant, finding that Team Rebar, Inc., is required to submit to an audit of its records by the Plaintiffs Funds;

2. That Team Rebar be compelled to submit to a complete audit of its records for the period of September 2007 through June 2008, to the auditor of Plaintiff Funds' choice to determine the amount of contributions due in accordance with the applicable terms of the Agreements;

3. That a judgment for delinquent contributions, interest, liquidated damages, and audit fees found to be due and owing from September 2007 through the present, be entered against Team Rebar;

    4.    That the Plaintiff Funds be awarded their costs, including reasonable attorneys' incurred in the prosecution of this Complaint, as provided in the Agreements and under the applicable provisions of ERISA, as amended, including 29 U.S.C. §1132(g)(2)(D); and

For other such legal or equitable relief as the Court deems appropriate.

Respectfully submitted,

JAMES R. KIMMEY III, No. 112019
BARTLEY GOFFSTEIN, L.L.C.
4399 Laclede Avenue
St. Louis, MO 63108
(314) 531-1054 Telephone
(314) 531-1131 Facsimile

and

LOCAL COUNSEL:

    s/ Evan J. Haim
Patrick E. Deady
Evan J. Haim
Hogan Marren, Ltd.
180 N. Wacker Drive, Suite 600
Chicago, IL 60606
312-946-1800

Attorneys for Plaintiffs

# EXHIBIT 1

Case 1:08-cv-04443   Document 1   Filed 08/06/2008   Page 8 of 20

# AGREEMENT

This Agreement is made and entered into on this ___17th___ day of _October_, 20_06_, by and between Regional Local Union No. 846 of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, hereinafter referred to as the "Union" and ___Team Rebar Inc.___, hereinafter referred to as the "Employer."

## ARTICLE I
## RECOGNITION

**Section 1.** The Employer recognizes Regional Local Union No. 846 of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers as the exclusive collective bargaining representative of all reinforcing steel iron workers employed by the Employer within the geographical areas stated in Article XXI of this Agreement.

## ARTICLE II
## MANAGEMENT RIGHTS

**Section 1.** The Employer retains full and exclusive authority for the management of its operations. Except as expressly limited by other provisions of this Agreement, the Employer may direct the working force, at its sole prerogative, including hiring, selection of foreman, promotion, transfer, layoff or discharge of its employees. No rules, customs or practices shall be permitted or observed which limit or restrict production of employees except as expressly limited by other provisions of this Agreement.

## ARTICLE III
## EMPLOYMENT

**Section 1.** The Employer shall have the right to employ employees from whatever source in the jurisdiction covered by this Agreement and shall have the right to transfer employees into any jurisdiction within the coverage of this Agreement.

**Section 2.** Should a signatory Employer employ journeymen Iron Workers from another Iron Worker Local Union in the geographic area in which it is working or bring in journeymen from another Iron Worker Local Union, then the Employer will pay those employees the wages and benefits required under their Local Union agreement or the rate provided for in this Agreement, whichever is higher.

## ARTICLE IV
## CRAFT JURISDICTION

**Section 1.** It is agreed that the jurisdiction of work covered by this Agreement is that provided for in the charter grant issued by the American Federation of Labor to the International Association of Bridge, Structural, Ornamental and Reinforcing Iron

1

Workers.

Section 2.    The work covered by this Agreement includes all or any of the following:

(A)   Work in connection with field fabrication, handling, racking, sorting, cutting, bending, loading and unloading, hoisting, placing, burning, welding and tying of all materials used to reinforce concrete construction.

(B)   Realigning of reinforcing iron, wire mesh placing, bricking, pulling and similar reinforcing materials, placing steel dowels as well as refastening and resetting same while concrete is being poured.

(C)   Reinforcing steel and wire mesh in roadways and sidewalks in connection with building construction.

(D)   The handling or placing of "J" or Jack bars on slip form construction; the placing of all clips, bolts and steel rods and wire fabric or mesh pertaining to gunite construction; the placing of steel-tex or paper-back mesh used primarily for reinforcing and placing wire mesh to reinforce gypsum roof construction.

(E)   Post Tensioning: All loading and unloading, hoisting, placing and tying of all post tensioning cables. Also wrecking of cones, wedging of the tendons, stressing, cutting and repairing.

(F)   Any other work related to subparagraphs (A) through (E) above.

(G)   Any work assigned by the Employer and agreed to by the Union on a specific jobsite, although such agreement will have no precedented impact on other jobsites.

<h3 align="center">ARTICLE V<br>UNION MANAGEMENT COMMITTEE</h3>

Section 1.    The Employer and the Union agree that there shall be established a "Union Management Committee" whose purpose shall be to discuss issues of importance to the Employers, Union and employees and which shall establish, subject to union ratification procedures, an hourly wage within the various geographical areas within the coverage of this Agreement.

Section 2.    The Committee shall consist of three (3) representatives of Employers, who shall be selected by the majority of Employers signatory to this Agreement and will be designated at the time of execution of this Agreement, and three (3) representatives of the Union, who shall be selected by the International President of the Union. The Employer and Union representatives shall establish the initial wage rate for each geographic area at the time of execution of this Agreement and shall set forth the region and the wage in that Region in Appendix A attached hereto. Any journeyman wage established by the Committee shall be at least two dollars ($2.00) more than the prevailing non-union wages in the geographic area, excluding Davis-Bacon. The

Committee shall meet at least every six months to determine if the wage rate is competitive within the area, unless the Committee believes that additional meetings are needed.

Section 3.    Wages due shall be paid to all employees weekly, but not later than Friday. Payment may be made by check or direct deposit, at the Employer's discretion.

## ARTICLE VI
## HOURS, OVERTIME AND SHIFTS

### Section 1. Hours of Work.

(A)    The workweek, except as otherwise specified in this Agreement, shall be Monday through Sunday. Eight (8) hours per day shall constitute a standard workday with a one-half (½) hour unpaid lunch period. All employees shall be entitled to a ten (10) minute morning break which shall be taken within two and one-half hours after start time. These working hours may be changed by mutual consent of the Employer and the Union. Employees shall be at their place of work prepared to start work at the designated starting time each day. Forty (40) hours per week shall constitute a regular week's work. A designated one-half (½) hour unpaid lunch period shall be scheduled at the midpoint of the scheduled work shift. Nothing in this Agreement shall be construed as guaranteeing any employee eight (8) hours per day or forty (40) hours per week.

(B)    The Employer has the option of working either five (5) eight-hour days or four (4) ten-hour days to constitute a normal forty (40) hour workweek.

(C)    When the four (4) ten-hour day workweek is in effect, the standard workday shall be an established consecutive ten (10) hour period exclusive of a one-half (½) hour unpaid lunch period. Forty (40) hours per week shall constitute a regular week's work.

(D)    In the event the job is down for any reason beyond the Employer's control, then any day except Sunday and holiday may, at the option of the Employer, be worked as a makeup day; straight-time pay not to exceed ten (10) hours or forty (40) hours per week.

(E)    The Employer will designate starting time.

### Section 2. Overtime.

(A)    All overtime work performed in excess of forty (40) hours will be paid at time and one-half the straight time rate of pay.

(B)    Work performed on Sundays and Holidays will be paid at time and one half the straight time rate of pay.

3

Section 3.  Shifts.

(A)   When so elected by the Employer, multiple shifts may be worked.

## ARTICLE VII
## DAVIS-BACON

Section 1.   On all jobs covered by Davis-Bacon or any state prevailing wage law, the Employer agrees to pay the wages and fringe benefit amounts prevailing on those jobs, provided those wages are higher than the wages established by this Agreement.

## ARTICLE VIII
## HOLIDAYS

Section 1.   The recognized holidays shall be as follows:

| | |
|---|---|
| New Year's Day | Labor Day |
| Memorial Day | Thanksgiving Day |
| Fourth of July | Christmas Day |

Section 2.   Under no circumstances shall any work be performed on Labor Day except in cases of emergency involving life or property.  In the event a holiday falls on Sunday, the following day, Monday, shall be observed as such holiday.  Monday holidays shall be honored in keeping with Federal Law.  If employees are required to work on a holiday, as observed, they shall receive time and one half the straight time rate of pay.  Holidays listed above may be changed by mutual agreement by the Union and the Employer.

## ARTICLE IX
## GRIEVANCE PROCEDURE

Section 1.   Any question arising out of this Agreement involving its interpretation or application, excluding trades jurisdictional disputes, shall be settled under the following procedures:

Step 1.   When any employee or the Union subject to the provisions of this Agreement believes a violation of this Agreement has occurred, acting through the Local Union steward, within three (3) working days after the occurrence or non-occurrence giving rise to the dispute, said employee or the Union shall give notice to the Employer stating the section alleged to have been violated.  Failure to raise any dispute within three (3) working days of the occurrence or non-occurrence shall constitute a waiver of the right asserted by the employee.  The dispute shall be discussed by the aggrieved employee with the steward and the Employer's representative at the construction site.  If the dispute is not settled within twenty-four (24) hours, Step 2 of the Grievance Procedure may be pursued no later than  two (2)

working days thereafter.

Step 2.     The employee, the local business representative of the Union and a representative of the Employer shall meet within ten (10) working days after timely notice of proceeding to Step 2 has been made and endeavor to adjust the matter. At this point the grievance shall be submitted in writing by the business representative of the Local Union to the Employer. If agreement cannot be reached after the meeting between these parties, the matter shall be referred to Step 3 of this Grievance Procedure within three (3) working days thereafter.

Step 3.     Failure under Step 2 to reach a decision shall constitute a basis for submittal of the dispute to arbitration for a binding decision. Unless the Employer and the Union cannot otherwise select an impartial Arbitrator, then the Employer and the Union shall choose an Arbitrator from a panel of seven (7) requested from the Federal Mediation and Conciliation Service. Costs of the Arbitrator shall be borne equally by the Union and the Employer. The decision of the Arbitrator shall be binding upon all parties.

Section 2.     The time limits specified in any step of the Grievance Procedure may be extended by mutual agreement. Failure to process a grievance, within the time limits provided above or within a mutually agreed upon extension of time, shall be deemed a waiver of such grievance.

Section 3.     In order to encourage the resolution of disputes and grievances at Steps 1 and 2 of this Grievance Procedure, the parties agree that such settlements shall not be precedent-setting.

## ARTICLE X
## UNION SECURITY

Section 1.     In states where applicable, it shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union signatory to the governing local labor agreement in good standing on the effective date of this Agreement shall remain members in good standing and those who are not members on the effective date of this Agreement, shall become and remain members in good standing in the Union signatory to the governing local labor agreement. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall, on the eighth day following beginning of such employment, become and remain members in good standing of the Union signatory to the governing local labor agreement. In States where applicable, if the Union notifies the Employer that an employee has failed to pay periodic dues and initiation fees uniformly required, the Employer shall be obligated to terminate the employee for such failure.

Section 2.     The provisions of this Article shall be effective in all jurisdictions where not prohibited by law.

Section 3.   This Article shall be interpreted in accordance with the provisions of Section 8(a)(3) of the Labor Management Relations Act of 1947, as amended.

## ARTICLE XI
## WORK STOPPAGES AND LOCKOUTS

Section 1.   During the existence of this Agreement, there shall be no strikes, picketing, work stoppages, or disruptive activity by the Union or by any employee; and there shall be no lockout by the Employer.

Section 2.   The Union shall not sanction, aid or abet, encourage or condone a work stoppage, strike or work slowdown at the project site and shall undertake all possible steps to prevent any strike, work stoppage or work slowdown.   No employee shall engage in any activities which interfere with the normal operation of the project. Violations shall be subject to disciplinary action, including discharge.

Section 3.   The Union shall not be liable for acts of employees for whom they have no responsibility.

## ARTICLE XII
## SUBCONTRACTING

Section 1.   The Employer agrees that work to be performed at the project site pursuant to the terms and provisions of this Agreement shall not be subcontracted to other firms, parties, Employers or other entity unless such subcontracted work is undertaken, performed and executed by employees who are employed by a contractor or subcontractor signatory to an Agreement with a union affiliated with the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers. It is understood and agreed that the purpose and function of this provision is not in any way to limit or restrict the ability of the Employer party to this Agreement to do business with other Employers, but rather, this provision is designed and intended to preserve work for employees whose wages, hours and conditions of employment are prescribed by this Agreement or, in the event subcontracting of work contemplated by this Agreement is undertaken, that the performance of such work and the practice of subcontracting do not result in the undermining of wages, hours and conditions of employment achieved by the Union through the collective bargaining process.

Section 2.   The furnishing of materials, supplies or equipment and the delivery thereof shall not in any case be considered as subcontracting.

## ARTICLE XIII
## NON-DISCRIMINATION

Section 1.   The Employer and the Union agree there shall be no discrimination against any employee or prospective employee due to race, color, creed, sex, age,

religion or national origin.

## ARTICLE XIV
## GENERAL SAVINGS CLAUSE

Section 1.   Any provisions in this Agreement which are in conflict with any Federal, Provincial, State or Local laws or regulations affecting all or part of the limits covered by this Agreement shall be suspended within the limits to which such law or regulation is in effect.  Such suspension shall not affect the operation of any such provisions covered by this Agreement, to which the law or regulation is not applicable.

## ARTICLE XV
## TRAINING PROGRAM

Section 1.   All employees hired or employed under this Agreement shall be classified as "A" Rodman until the employee has completed either two (2) years or 4,000 hours as an "A" Rodman under this Agreement. Thereafter, the employee shall be classified as a Journeyman Rodman.

## ARTICLE XVI
## MANNING

Section 1.   The Employer agrees that all work under this Agreement may be performed by his employees, who may travel from site to site, throughout the geographic jurisdiction of this Agreement and who are regularly and customarily employed by the Employer whenever he has work and who have been employed by him at sometime during the past six (6) months and who because of this special knowledge, skill and expertise regarding the Employer's operations are considered necessary by the Employer to efficiently perform work under this Agreement.

Section 2.   In addition to key persons so hired, persons from the Local Union referral hall in the geographical jurisdiction which the work is being performed may also be hired, to complete the manning of a job if available within forty-eight (48) hours.

## ARTICLE XVII
## FRINGE BENEFIT FUNDS

Section 1.   The Employer and the Union have agreed to the establishment of a jointly-administered health and welfare fund and a vacation fund to be established pursuant to Trust.  The Employer agrees to be bound by the terms of the Trust and the rules adopted by the Trustees.  The Trust shall be administered by four (4) Employer and four (4) Union Trustees.  The initial Employer Trustees shall be appointed by the majority of the signatory contractors.  The Union Trustees shall be appointed by the International President of the Union and shall serve at his pleasure.

Section 2. Key persons.   The Employer agrees to make timely payments into all fringe benefit funds negotiated and described herein. With respect to all key employees who designate home Local Unions other than the signatory Local Union, the Employer shall make contributions in required amounts to the home local pension, health and welfare, annuity, vacation and other welfare benefit funds, if any, of the home Local Union provided that the trust funds so designated agree to accept the contributions and credit the key persons for those contributions in accordance with the trust funds' rules. The contributions shall be at the customary rates set by the home trust funds. The key persons for whom contributions are made to home trust funds shall look only to those trust funds for benefits. If the home trust funds refuse to accept the contributions then the contribution amounts shall be added to the key person's take home wages. This section pertaining to key persons shall apply only to those individuals agreed to by the Union as key persons who are members of a Local Union other than those signatory to this Agreement and other than the Local Union which has geographic jurisdiction where the work is performed. With respect to all other employees the remaining provisions of this Article XVII applying for other than key persons shall apply.

Section 3. Other than key persons.    Any Employer obligated to the terms and provisions of this Agreement shall contribute, pay and remit to the trustees of the fund or funds at the office of the fund or funds amounts as set forth in Appendix A for each hour worked by each employee covered by this Agreement at least until such time that the rate of contribution may be changed in the manner hereinafter provided for. This Agreement authorizes contributions to such pension, health and welfare, vacation, annuity and other welfare benefit funds as are legal and appropriate under ERISA or under another applicable Federal Labor Law to which the Employer and International Association agree to make contributions in such amount as is agreed and reflected in Appendix A Fringe Benefits.

Section 4.   On January 1 of each year of the term of this Agreement, or more frequently if agreed to by the Union and trustees of the various funds, they shall determine the amount of funds to be distributed to each of the health and welfare vacation and other welfare benefit trusts, which constitute the fringe benefit trusts covered by this Agreement. The sum of all contributions to all trusts shall always equal the amounts reflected for the appropriate time period in Appendix A. While the contribution rates to each trust may vary to reflect the needs of the various trusts, the sum of said contributions shall be the amounts designated in Appendix A.

Section 5.   Failure to make remittances to the fringe benefits funds by the 15th day of the month following the month in which work was performed shall result in the accrual of interest at the rate of one and one-half percent (1 1/2%) per month for all unpaid balances, plus such accounting fees, attorneys fees, auditing fees, and other expert fees as are necessary if litigation is filed to collect said delinquent amounts.

Section 6.   The terms of the various trust and plan documents as they currently exist, and as they may be amended by the trustees from time to time during the term of this

8

Agreement are incorporated herein and shall apply to the signatory Employer. Should any Employer fail to make all contributions or file all reports by the 15th of the month following the month in which the work was performed then the provisions of Article XI shall not apply and the Union may engage in a work stoppage, strike or other legal economic activity to enforce the provisions of this Agreement, as well as proceeding under Article IX.

## ARTICLE XVIII
## IMPACT

Section 1.   In addition to the per hour wage rate, the Employer shall contribute an additional one percent (1%) of the existing wage rate to Ironworker Management Progressive Action Cooperative Trust (IMPACT), a jointly trusteed Cooperative Trust with federal tax exempt status under Section 501(a) of the Internal Revenue Code as an exempt organization under Section 501(c)(5) of the Internal Revenue Code. The general purpose of the Trust includes the improvement and development of the Ironworker Industry through education, training, communication, cooperation and governmental lobbying and legislative initiatives.

Section 2.   The reporting, payment, frequency of payment and administration of such contributions shall be governed by the terms of the IMPACT Trust agreement, policies and resolutions.

Section 3.   The one percent (1%) contribution shall be in lieu of any and all contractual requirements for contributions to the National Ironworkers and Employers Apprenticeship Training and Journeyman Upgrading Fund and the Institute of the Ironworking Industry.

## ARTICLE XIX
## DUES CHECK-OFF

Section 1.   Every Employer signatory to this Agreement agrees to check-off from the wages of any employee employed by such Employer during the term of this Agreement dues in the amount specified in the Union's bylaws and to remit said amount to the Union in the following manner:

(A)   The Union will notify the Employer in writing of the amount of dues specified in the bylaws, and will submit to the Employer a copy of the bylaws or the applicable bylaw provision.

(B)   On or before the 15th day of each month, the Employer will remit to the Union the amount of dues owing as to each employee for the previous month, together with a list of employees covered.

(C)   The obligation of the Employer shall apply only to those employees who have

9

voluntarily signed a dues deduction authorization card, a copy of which shall be provided to the Employer.

(D)     Initiation fees: Standard initiation fees are also subject to the dues deduction provisions of this Article. For the initial twelve (12) months of this Agreement, standard initiation fees are waived.

## ARTICLE XX
## SCOPE OF AGREEMENT

Section 1.    Should a project be one that is or will be covered by a National Maintenance Agreement, Project Labor Agreement, General Presidents Agreement or an NCA and that project includes reinforcing as work covered by the National Maintenance Agreement, Project Labor Agreement, General Presidents Agreement or NCA, then this Agreement shall not apply and the provisions of the collective bargaining agreement of the Local Union in the geographic area shall apply.

## ARTICLE XXI
## TERRITORIAL JURISDICTION

Section 1.    This Agreement shall cover the following geographic areas:

    Local Union No. 21, Omaha, Nebraska - entire territorial jurisdiction.
    Local Union No. 24, Denver, Colorado - entire territorial jurisdiction.
    Local Union No. 27, Salt Lake City, Utah - entire territorial jurisdiction.
    Local Union No. 28, Richmond, Virginia - entire territorial jurisdiction.
    Local Union No. 48, Oklahoma City, Oklahoma - entire territorial jurisdiction.
    Local Union No. 58, New Orleans, Louisiana - entire territorial jurisdiction.
    Local Union No. 66, San Antonio, Texas - entire territorial jurisdiction.
    Local Union No. 75, Phoenix, Arizona - entire territorial jurisdiction
    Local Union No. 79, Norfolk, Virginia - entire territorial jurisdiction.
    Local Union No. 84, Houston, Texas - entire territorial jurisdiction.
    Local Union No. 92, Birmingham, Alabama - entire territorial jurisdiction.
    Local Union No. 125, Beaumont, Texas - entire territorial jurisdiction.
    Local Union No. 135, Galveston, Texas - entire territorial jurisdiction.
    Local Union No. 167, Memphis, Tennessee - entire territorial jurisdiction.
    Local Union No. 184, Sioux City, Iowa - entire territorial jurisdiction with the exception of Counties in the State of Minnesota.
    Local Union No. 263, Dallas/Ft. Worth, Texas - entire territorial jurisdiction.
    Local Union No. 321, Little Rock, Arkansas - entire territorial jurisdiction, exceptthe Missouri counties of Taney, Douglas and Ozark County.
    Local Union No. 384, Knoxville, Tennessee - entire territorial jurisdiction.
    Local Union No. 387, Atlanta, Georgia - entire territorial jurisdiction.
    Local Union No. 397, Tampa, Florida - entire territorial jurisdiction.
    Local Union No. 402, West Palm Beach, Florida - entire territorial jurisdiction.
    Local Union No. 454, Casper, Wyoming - entire territorial jurisdiction

IN WITNESS WHEREOF, the parties hereto have set their respective hands and seals, and caused this Agreement to be signed by their respective authorized representatives on this __17__ day of __October__, 20__06__

Regional Local Union No. 846

_Frank N Pawel_ (signed)
**Union Representative (signed)**

__Frank N Pawela__
**Union Representative (printed)**

Employer Name
__Tech Rebar, Inc.__

_signature_
**Employer Representative (signed)**

__Steven Kompcz__
**Employer Representative (printed)**

__3852 S. Hopkins Ave__
**Street Address**

__Titusville, Fl 32780__
**City, State, Zip Code**

__321 264 0972__
**Telephone Number**

__321 264 3959__
**Fax Number**

__techrebarinc@aol.com__
**E-mail**

This agreement does not include the attached list of jobs previously awarded or negotiated by Tech Rebar, Inc. as of 10/17/06

_FNP_
_SM_

12

(including South Dakota).
<u>Local Union No. 469, Jackson, Mississippi</u> - entire territorial jurisdiction.

<u>Local Union No. 477, Sheffield, Alabama</u> - entire territorial jurisdiction.
<u>Local Union No. 482, Austin, Texas</u>  - entire territorial jurisdiction.
<u>Local Union No. 492, Nashville, Tennessee</u> - entire territorial jurisdiction.
<u>Local Union No. 495, Albuquerque, New Mexico</u> - entire territorial jurisdiction.
<u>Local Union No. 584, Tulsa, Oklahoma</u> - entire territorial jurisdiction.
<u>Local Union No. 591, Shreveport, Louisiana</u> - entire territorial jurisdiction.
<u>Local Union No. 597, Jacksonville, Florida</u> - entire territorial jurisdiction.
<u>Local Union No. 601, Charleston, South Carolina</u> - entire territorial jurisdiction.
<u>Local Union No. 606, Wichita, Kansas</u> - entire territorial jurisdiction.
<u>Local Union No. 623, Baton Rouge, Louisiana</u> - entire territorial jurisdiction.
<u>Local Union No. 697, Roanoke, Virginia</u> - entire territorial jurisdiction.
<u>Local Union No. 704, Chattanooga, Tennessee</u> - entire territorial jurisdiction.
<u>Local Union No. 709, Savannah, Georgia</u> - entire territorial jurisdiction.
<u>Local Union No. 710, Monroe, Louisiana</u> - entire territorial jurisdiction.
<u>Local Union No. 732, Pocatello, Idaho</u> - entire territorial jurisdiction.
<u>Local Union No. 798, Mobile, Alabama</u> - entire territorial jurisdiction.
<u>Local Union No. 808, Orlando, Florida</u> - entire territorial jurisdiction.
<u>Local Union No. 843, Greensboro, North Carolina</u> - entire territorial jurisdiction.

## ARTICLE XXII
## DURATION AND TERMINATION

<u>Section 1.</u>    This Agreement shall become effective on _____ and remain in full force and effect until midnight of February 10, 2008, and, unless written notice is given by either party to the other by certified or registered mail at least four (4) months prior to such date of a desire for change or termination, this Agreement shall continue in effect for an additional year thereafter.  In the same manner, this Agreement, with any amendments thereof, shall remain in effect from year to year thereafter, subject to termination at the expiration of any such contract year upon notice in writing given by either party to the other at least four (4) months prior to the expiration of such contract year.  Any such notice as provided for in this Section, whether specifying a desire to terminate or to change at the end of the current contract year, shall have the effect of terminating this Agreement at such time.